|   |   |   |
|---|---|---|
| 1 | **UNITED STATES DISTRICT COURT** | |
| 2 | **DISTRICT OF NEVADA** | |

PHILLIP HICKS, )
) 3:08-cv-0171-ECR (VPC)
            Plaintiff, )
)
      vs. ) **REPORT AND RECOMMENDATION**
) **OF U.S. MAGISTRATE JUDGE**
)
MICHAEL J. ASTRUE, )
Commissioner, )
Social Security Administration, )
) September 15, 2009
            Defendants. )
_____ )

This Report and Recommendation is made to the Honorable Edward C. Reed, Jr., United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for reversal and/or remand (#12). Defendant opposed and filed a cross motion for summary judgment (#16), and plaintiff replied (#18). For the reasons set forth below, the court recommends that plaintiff's motion for reversal and/or remand (#12) be denied, and defendant's cross-motion for summary judgment (#16) be granted.

## I. ADMINISTRATIVE PROCEEDINGS

On November 5, 2004, plaintiff Phillip Hicks ("plaintiff") protectively filed an application for Social Security disability insurance benefits under Title II of the Social Security Act and for Supplemental Security Income under Title XVI of the Act (AR 96-106). Plaintiff alleged disability beginning on May 3, 2004 based on a broken left elbow, arthritis, depression, degenerative disc disease, diabetes, and tendinitis (AR 96). Plaintiff's claim was denied initially on April 3, 2005 and on reconsideration on December 28, 2005 (AR 80-88). On February 23, 2007, a hearing was held before Administrative Law Judge ("ALJ") James M. Mitchell, where plaintiff was represented by a non-attorney representative (AR 14-25 (opinion); AR 36-77 (transcript). The ALJ found the plaintiff not disabled on October 24, 2007 *Id*. Plaintiff requested administrative review, but the Social Security Administration Appeals Council ("Appeals

Council") denied review on February 19, 2008 (AR 5). Having exhausted all administrative remedies, plaintiff filed a complaint for judicial review on April 3, 2008 (#2).

## II. BACKGROUND

Plaintiff was born on November 2, 1951, and was fifty-five years old at the time of his hearing (AR 38). Plaintiff completed high school (AR 39). Plaintiff's past employment includes work as a card dealer in a casino and as a medical records clerk and patient account counselor in a medical facility (AR 40-46). Plaintiff alleges that he became disabled on May 3, 2004, due to rheumatoid arthritis, diabetes, hypertension, status post bi-lateral lobe pneumonia, status post left elbow fracture, degenerative disk disease, significant lumbar pathology and spondylosis, and depression (#12, p. 4).

Following the 2008 hearing, the ALJ found plaintiff not disabled because he was capable of performing work that exists in significant numbers in the national economy (AR 24). Specifically, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since May 3, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: rheumatoid arthritis, diabetes, hypertension, status post bilateral lobe pneumonia, status post left elbow fracture, degenerative disc disease and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work except he is slightly limited in the ability to perform simple, repetitive tasks. The claimant is moderately limited in the ability to reach overhead with the bilateral upper extremities. He is slightly limited in the ability to perform fine and gross manipulation with the bilateral hands. He should not be exposed to respiratory irritants more than occasionally.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 2, 1951 and was fifty-two years old, which is defined as an individual closely approaching advanced age, on the disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules as a framework supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 3, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g).

(AR 19-25).

### III.  STANDARD OF REVIEW

The court must uphold the decision of an administrative law judge if the ALJ properly applied the correct legal standards and his findings of fact are supported by substantial evidence in the record. *See Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); 42 U.S.C. § 405(g). "Substantial evidence" has been defined as "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Matthews v. Shalala,* 10 F.3d 678, 679 (9th Cir. 1993); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence is more than a mere scintilla but less than a preponderance. *See Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), *citing Smolen*, 80 F.3d at 1279. "To determine whether substantial evidence exists [the court must] look at the record as a whole, considering both evidence that supports and undermines the ALJ's findings.  However, if the evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th

Cir. 1995) (citations omitted). The ALJ alone is responsible for determining credibility, and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

## IV.  DISCUSSION

Plaintiff petitions this court to reverse or remand the ALJ's decision based on five errors: 1) The ALJ improperly discredited Plaintiff's testimony; 2) The ALJ's finding of a light RFC was incorrect based on the evidence in the record; 3) The ALJ did not appropriately develop the record and consider the impact of plaintiff's medications on his RFC; 4) The ALJ improperly summarized and assessed the medical findings with respect to plaintiff's lumbar condition; and 5) The ALJ did not consider plaintiff's pernicious anemia (#12). Defendant contends that the ALJ's decision was supported by substantial evidence and was free of legal error. Therefore, the ALJ's decision should be affirmed (#16).

### A.   Legal Framework

Pursuant to the SSA, the Secretary has adopted regulations which establish a formalized, five-step sequential evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The Administrative Law Judge considers: (1) whether the person is engaging in substantial gainful activity; (2) severity of the alleged impairment; (3) whether the impairment meets or equals a listed impairment and meets the duration requirement; (4) whether the individual is capable of doing work he or she has done in the past; and (5) whether the impairment prevents the person from doing any other work. *Id.* If at any point in the five-step inquiry it is determined that a claimant is or is not disabled, further review is unnecessary.

### B.   ALJ's discounting of plaintiff's credibility

Plaintiff claims that the ALJ improperly discredited his testimony (#12, p. 7). Plaintiff asserts that his credibility is supported by his "constant quest for medical treatment," regardless of whether such medical treatment was extreme or conservative. *Id*. p. 8. Plaintiff also states that, contrary to the ALJ's findings, his rheumatoid arthritis is not well-controlled with medication. *Id*. Although his medical records show that his arthritis was improving between 2006 and 2007, when plaintiff was working in 2004, his records demonstrate that he was in extreme pain and had "an extreme inability to work." *Id*. Further, although the ALJ found that plaintiff's daily activities

4

1  were not as limited as one would expect, plaintiff actually engages in very little physical activity,
2  which does not consume a substantial part of his day. *Id*. Moreover, plaintiff's act of obtaining
3  unemployment benefits should not be used to suggest that plaintiff is not credible. *Id*. p. 10.
4  Finally, "the ALJ's overall approach to discrediting Plaintiff's testimony should be evaluated in
5  the context of a comment made by the ALJ during the course of the hearing." *Id*. Specifically,
6  the ALJ stated that "pain is part of being alive" (AR 58). Plaintiff argues that this statement is
7  "outrageous" and demonstrates the ALJ's attitude with respect to plaintiff; therefore, plaintiff
8  requests this statement be considered when evaluating the ALJ's decision, as "[c]omments such
9  as this have no business being made in Court." *Id*.

10  Defendant contends that the ALJ gave clear and convincing reasons for discounting
11  plaintiff's credibility; therefore, the ALJ's decision should be affirmed (#16, p. 4-5). Specifically,
12  plaintiff's conservative treatment, medication management, daily activities, and receipt of
13  unemployment benefits were all valid and clear and convincing reasons for discounting plaintiff's
14  credibility. *Id*. p. 5-7.

15  The ALJ is responsible for determining credibility, resolving conflicts in medical
16  testimony and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). If
17  the ALJ rejects the claimant's subjective complaints, the ALJ must provide "specific, cogent
18  reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). If a claimant
19  produces medical evidence of an impairment, the ALJ may not discredit the claimant's testimony
20  as to the severity of the symptoms merely because they are unsupported by objective medical
21  evidence. *Reddick*, 157 F.3d at 722, *citing Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991)
22  (*en banc*). "Unless there is affirmative evidence showing that the claimant is malingering, the
23  Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'"
24  *Lester*, 81 F.3d at 834. "The fact that a claimant's testimony is not fully corroborated by the
25  objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it."
26  *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001), *citing Smolen*, 80 F.3d at 1285. The ALJ
27  must identify what specific evidence undermines the plaintiff's complaints. *Id*. In addition to the
28  objective medical evidence, 20 C.F.R. § 404.1529(c)(3) mandates that the ALJ assess the

1  following when assessing the credibility of a claimant's description of pain: "(i) Your daily
2  activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
3  (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects
4  of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment,
5  other than medications, you receive or have received for relief of your pain or other symptoms;
6  (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g. lying flat on
7  your back, standing for 15-20 minutes every hour, sleeping on a board, etc.); and (vii) Other
8  factors concerning your functional limitations and restrictions due to pain or other symptoms."
9  20 C.F.R. § 404.1529(c)(3)(i)-(vii).

10  The ALJ discounted plaintiff's credibility concerning the intensity, persistence, and
11  limiting effects of his symptoms, based on five grounds. First, plaintiff received only routine and
12  conservative treatment, and his blood pressure, diabetes, and rheumatoid arthritis are well
13  controlled with medication, as demonstrated by his medical progress notes (AR 23). Second,
14  "[d]espite allegations of unremitting pain, objective clinical findings demonstrate only lumbar
15  spondylosis." *Id*. Third, with regard to plaintiff's depression, plaintiff had not been entirely
16  compliant in taking prescribed medications, and his depression was well controlled when he was
17  not abusing alcohol and taking his medications as prescribed. *Id*. Fourth, plaintiff's daily activities
18  "are not limited to the extent one would expect given the complaints of totally disabling
19  symptoms and limitations." *Id*. Finally, plaintiff was collecting unemployment benefits at the time
20  of the hearing, which presumes that he was "making periodic statements to the state of Nevada
21  that he is ready, willing and able to return to work." *Id*. The ALJ determined that these reports
22  were an inconsistency bearing on credibility, and found that plaintiff was exaggerating his
23  limitations (AR 24).

24  Plaintiff bases much of his argument on the holding in *Vertigan v. Halter*, 260 F.3d 1044
25  (9th Cir. 2001). Plaintiff claims that his "constant quest for medical treatment" supports his
26  credibility with regard to the severity of his pain, stating that the court in *Vertigan* did not
27  distinguish between extreme medical treatment and conservative treatment (#12, p. 7-8).
28  Therefore, the ALJ could not discredit plaintiff's testimony based on the conservative treatment

6

1  he received. The court disagrees. As an initial matter, the plaintiff in *Vertigan* was suffering from
2  more severe physical impairments than Mr. Hicks, and was prescribed very aggressive treatment
3  for her pain (six spinal surgeries, epidural blocks, and extended periods of physical therapy, no
4  ability to do any heavy lifting, bending, stooping, or prolonged sitting or standing).  Moreover,
5  the Ninth Circuit has explicitly stated that "evidence of 'conservative treatment' is sufficient to
6  discount a claimant's testimony regarding the severity of an impairment." *Parra v. Astrue*, 481
7  F.3d 742, 751 (9th Cir. 2007); *see also Johnson  v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995),
8  *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999).
9         Plaintiff also cites *Vertigan* to support his contention that the ALJ improperly found that
10  his daily activities were not as limited as one would expect (#12, p. 8). There, the Ninth Circuit
11  reiterated the Circuit's previous holding that "one does not need to be utterly incapacitated in
12  order to be disabled." *Veritgan*, 260 F.3d at 1050, *citing Fair v. Bowen*, 885 F.2d 597, 603 (9th
13  Cir. 1989). The court stated that the ALJ must consider the claimant's daily activities and the
14  adjudicator's personal observations of the claimant, in evaluating the credibility of the claimant's
15  testimony. *Id*. at 1049. "With respect to daily activities...if a claimant 'is able to spend a
16  *substantial part* of [his] day engaged in pursuits involving the performance of physical functions
17  that are transferable to a work setting, a specific finding as to this fact may be sufficient to
18  discredit a claimant's allegations." *Id*., *quoting Morgan v. Commissioner of the Social Sec.*
19  *Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (emphasis in original).
20         In *Vertigan*, the plaintiff was able to go grocery shopping with assistance, walk
21  approximately an hour in the malls, get together with friends, play cards, swim, watch television,
22  and read. The court found that these activities did not consume a substantial part of the plaintiff's
23  day and that walking in the malls and swimming were not necessarily transferable to the work
24  setting "with regard to the impact of pain." *Id*. The court agrees that the standard set out in
25  *Vertigan* is controlling law and that it has been repeated in numerous Ninth Circuit cases.
26  However, the ALJ did not base his decision to reject plaintiff's testimony solely on plaintiff's
27  daily activities. He also noted that plaintiff received conservative treatment, his complaints were
28  contradicted by the objective medical evidence, he failed to comply with his prescription

1  medication regiment, and he received unemployment benefits (AR 23-24). In *Vertigan*, the ALJ
2  there focused on Vertigan's daily activities and gave much weight to one statement of Vertigan's
3  treating physician, even though that statement was conflicted by all of the same physician's other
4  findings. *Vertigan*, 260 F.3d at 1049-50. Such is not the case here. The ALJ in plaintiff's case did
5  not base his credibility findings solely on plaintiff's daily activities. Although the court agrees that
6  plaintiff spends most of his time indoors watching television, the ALJ's finding that plaintiff's
7  record of daily activities belies his complaints of pain is supported by substantial evidence.

8        Plaintiff also argues that the ALJ's remaining reasons for discounting plaintiff's credibility
9  were improper, namely, that plaintiff's rheumatoid arthritis appeared to be well-controlled with
10  medication and that plaintiff was collecting unemployment (#12, p. 8-10). The court disagrees.
11  With regard to plaintiff's rheumatoid arthritis, the ALJ cited to numerous medical records and
12  treatment notes which state that, although plaintiff had "good days and bad days," plaintiff's
13  rheumatoid arthritis was fairly well controlled with medication (AR 20-23, 242, 233 ("pain seems
14  better controlled"), 239 ("pain/nausea improved," "joint pains fairly stable w/meds"), 240 ("joint
15  pains fairly well controlled"); *see also* AR 307 ("P[atient] reports good control of [rheumatoid
16  arthritis]"), 312 ("[Rheumatoid arthritis] - fairly well controlled, [no changes] to meds"), 318
17  ("[Rheumatoid arthritis] - fairly stable"). Further, plaintiff's physicians decreased the dosage of
18  plaintiff's narcotics prescriptions because his rheumatoid arthritis had improved (AR 318, 320,
19  324-325). Therefore, the ALJ's finding that plaintiff's rheumatoid arthritis is controlled through
20  medication is supported by substantial evidence in the records. With regard to plaintiff's
21  unemployment benefits, the ALJ properly found plaintiff's statements that he is ready, willing and
22  able to work to be an inconsistency bearing on credibility (AR 23).  The ALJ may take
23  inconsistencies in a claimant's statements into account when making a credibility determination.
24  *Smolen v. Chater*, 80 F.3d 1278, 1284 (9th Cir. 1996).

25        Questions of credibility are for the ALJ to decide, and "where...the ALJ has made specific
26  findings justifying a decision to disbelieve an allegation of excess pain, and those findings are
27  supported by substantial evidence in the record, [the court's] role is not to second guess that
28  decision." *Fair*, 885 F.2d at 604. Further, "when evidence reasonably supports either confirming

or reversing the ALJ's decision, [the court] may not substitute [its] judgment for that of the ALJ." *Batson v. Commissioner of the Social Security Administration*, 359 F.3d 1190, 1196 (9th Cir. 2004). The ALJ made specific findings justifying his decision to disbelieve plaintiff's allegations of the intensity, persistence and limiting effects of his pain. Taken as a whole, the ALJ's reasons for rejecting plaintiff's pain testimony are clear and convincing and are supported by substantial evidence in the record.

### C.    ALJ's Assessment of Medical Findings

Plaintiff argues that the ALJ incorrectly found that the only objective medical findings of plaintiff's back pain demonstrate lumbar spondylosis (#12, p. 10). Plaintiff claims that although the radiologist's overall assessment was that plaintiff suffered from mild lumbar spondylosis, the radiologist also noted the appearance of "mild disk space narrowing" and "vacuum phenomenon L5-S1." *Id*. As such, plaintiff contends that the ALJ should have discussed these findings. *Id*. Defendant's position is that the ALJ properly considered the objective medical records when determining that plaintiff had "mild lumbar spondylosis," and that the ALJ is not required to specifically note every mild and small radiological finding when he accepted the radiologist's overall diagnosis (#16, p. 8).

The court is slightly confused by plaintiff's argument. It appears that plaintiff wanted the ALJ to reject the radiologist's overall impression, and come to his own conclusion based on the underlying findings that led to the impression. The ALJ was not required to reject the radiologist's overall impression. Indeed, it would have been bizarre for the ALJ to do so. Plaintiff stresses the fact that the radiologist noted that plaintiff suffered from mild disc space narrowing, vacuum phenomenon, and small annular osteophytes, and states that "[c]learly, Mr. Hicks' back has more going on that spondelosis" (#12, p. 11). However, the radiologist determined that all of these small irregularities led to an overall diagnosis of mild lumbar spondylosis. Unlike the ALJ or plaintiff, the radiologist is trained and qualified to make this diagnosis. Therefore, as plaintiff presented no medical evidence that the diagnosis was incorrect, or that another doctor came to an opposing conclusion, the ALJ properly accepted the radiologist's impression, rather than attempting to make a differing medical conclusion based on the noted findings.

1        **D.      Side Effects of Plaintiff's Medication**

2        Plaintiff contends that the ALJ did not develop the record as to the medications plaintiff
3 was taking, and did not properly consider the side effects of these medications, which could "have
4 potentially significant side effects and prevent a person from being able to work full time" (#12,
5 p. 12). Defendant claims that the ALJ was not required to discuss side effects because plaintiff
6 did not indicate "any medical treatment records which documented side effect complaints, or to
7 any physician's statement that Plaintiff experienced side effects" (#16, p. 8). Further, plaintiff
8 does not explain how any side effects were functionally limiting. *Id*.

9        During plaintiff's hearing, his representative asked him to list his medications. Plaintiff
10 stated that he is taking Metformin for diabetes, Morphine and Hydrocodone for pain, and
11 Prednisone and Methotrexate for arthritis (AR 64-65). Plaintiff did not mention the existence of
12 any side effects. Plaintiff completed a Disability Report, Form SSA 3369, on November 2, 2004.
13 In this form, plaintiff stated that he was taking Glucophage, a diabetes medication, which caused
14 fatigue, and Tylenol/Codeine for pain, which caused no side effects (AR 98). Plaintiff completed
15 a Disability Report - Form SSA 3368 on November 29, 2004. Plaintiff noted that he had received
16 medication for depression, and that he received morphine and Demerol shots for pain (AR 123).
17 However, under medications, plaintiff again only listed Glucophage and Tylenol/Codeine, and
18 again stated that Glucophage caused drowsiness, and that Tylenol/Codeine caused no side effects
19 (AR 124). On May 6, 2005, plaintiff completed a Disability Report - Appeal. In this report,
20 plaintiff noted that he took Vicodin for pain, which caused him to feel goofy, forgetful, and tired
21 (AR 144). Plaintiff completed another Disability Report - Appeal form on February 1, 2006. In
22 this report, plaintiff again stated that he took Glucophage and Tylenol/Codeine. However,
23 plaintiff claimed that Glucophage caused no side effects and that Tylenol/Codeine caused upset
24 stomach (AR 147). Plaintiff did not note Vicodin or Morphine on this report. Plaintiff has also
25 stated that he takes Prozac, although there is evidence of non-compliance, and there is no mention
26 of side effects (AR 162).

27        Plaintiff's medical records contain some discussion of side effects. On February 17, 2005,
28 plaintiff underwent a disability evaluation, which indicated that plaintiff was taking Glucophage,

1  Hytrin, and Wellbutrin, but did not note any side effects (AR 167). The report also states that
2  plaintiff takes Vicodin "intermittently" for pain. *Id*. Plaintiff was seen by Steven Zuchowski at
3  Northern Nevada Adult Mental Health Services on July 28, 2005, and November 10, 2005, for
4  medication management (AR 196). At his July 28 appointment, plaintiff complained that he had
5  experienced some fatigue after taking Lexapro. *Id*. At his November 10 appointment, plaintiff
6  "[r]eport[ed] no significant side effects." *Id*. On June 6, 2005, a nurse completed an Outpatient
7  Nursing Assessment form for plaintiff (AR 199). On this form, plaintiff listed his medications as
8  Oxycodone, Cyanocobalamin, Glucophage, and Baclofen, and stated that he was experiencing
9  no side effects. *Id*. On July 8, 2004, plaintiff completed a Psychiatric Observation Unit Medical
10 Assessment form (AR 211). Plaintiff stated that he had not taken his prescribed medication for
11 eight months, but that he had taken Prozac, Darvocet, Soma, Naproxen, and Glucophage. *Id*. At
12 a December 7, 2005, visit to the Washoe Medical Clinic, plaintiff stated that his fatigue was
13 "enhanced by Methadone" (AR 233). However, because of this side effect, plaintiff was
14 prescribed Percocet in the alternative (AR 234). There is some evidence that Naprosyn caused
15 plaintiff nausea (AR 240). However, Dr. Gonzalez noted that plaintiff's nausea improved after
16 he stopped taking Naprosyn (AR 239). On August 22, 2006 and October 17, 2006, plaintiff's
17 medical chart notes that plaintiff was "tolerating" his medications (AR 317, 323).
18     Although plaintiff claims that the ALJ improperly failed to develop the record on side
19 effects, and failed to consider the "potentially significant" side effects of plaintiff's medications
20 (#12, p. 12), plaintiff "offers no objective evidence that his medications" actually caused
21 debilitating side effects. *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002). "The only
22 evidence regarding these symptoms is [plaintiff's] own statements to [the Social Security
23 Administration and to] his doctor." *Id*. The ALJ properly discredited plaintiff's statements
24 regarding his pain and other symptoms using "ordinary techniques of credibility evaluation." *Id*.
25 The ALJ noted that plaintiff's statements are contradicted by the medical evidence, that plaintiff's
26 activities of daily living are inconsistent with disability, and that plaintiff applied for and received
27 unemployment benefits for a portion of the time he claims disability (AR 23). As discussed
28 above, plaintiff's medical record contains "no evidence of significant side effects from the

medications that he has been taking." *Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (9th Cir. 2001). Although plaintiff complained of some fatigue at certain times, this side effect does not appear to have been significant or persistent. Plaintiff complained of side effects on only limited occasions and on the occasions he did complain, his physicians prescribed alternative medications.

Moreover, plaintiff submits contradictory statements on the side effects of certain medications. Specifically, on November 2, 2004, plaintiff stated that Glucophage caused fatigue. However, on February 1, 2006, plaintiff claimed that Glucophage caused no side effects. On June 6, 2005, plaintiff also stated that Glucophage caused no side effects. Similarly, on November 2, 2004, plaintiff noted that Tylenol/Codeine which caused no side effects, but on February 1, 2006, plaintiff claimed that Tylenol/Codeine caused upset stomach (AR 98). Plaintiff also contends that "[i]t goes without saying that taking Morphine and Prednisone are significant and have potentially significant side effects that prevent a person from being able to work full time" (#12, p. 12). However, the record does not indicate that these medications would prevent plaintiff from working. The record reflects that plaintiff only takes Morphine intermittently and has not complained of serious side effects. Further, plaintiff never complained of side effects of prednisone. There are also numerous notations in the record that state that plaintiff suffered no significant side effects or was "tolerating" his medications. Plaintiff has presented no objective evidence that his medications caused significant side effects, and the ALJ properly discounted plaintiff's credibility regarding his pain and other symptoms. As such, the ALJ's decision is supported by substantial evidence.

### E.     Plaintiff's Residual Functional Capacity

Plaintiff argues that the ALJ improperly found that plaintiff has a light RFC (#12, p. 12). The ALJ stated that he relied on the opinion of a non-examining state Social Security physician, which opinion specifically stated that plaintiff had a sedentary RFC. Therefore, the ALJ's finding of a light RFC is contradictory and in error. *Id*. p. 13.  Defendant contends that the ALJ's RFC finding is supported by substantial evidence because several doctors opined that plaintiff could

perform a range of light work (#16, p. 9). Moreover, even if plaintiff were limited to sedentary work, he would be found not disabled according to the Medical-Vocational Guidelines and the Vocational Expert's testimony. Therefore, any error by the ALJ in finding plaintiff had a light, rather than sedentary RFC, is harmless. *Id*. p. 9-19.

The ALJ stated that he was giving "substantial weight to the assessments of the State Agency medical consultants to the effect that the claimant is capable of working (B2F, B3F, B4F, and B8F). These assessments are wholly consistent with the weight of the medical issues of record and rendered by physicians who are experts in the evaluation of the medical issues in disability claims under the Social Security Act. The undersigned, giving the claimant every benefit of the doubt, finds that he is somewhat more limited than determined by the State Agency medical consultants" (AR 24). Exhibits B-3F, B-4F and B-8F all evaluate plaintiff's physical limitations (AR 166-181, 294-301). Plaintiff specifically asserts that the assessment completed by Dr. Rattray-Hahn, exhibit B-3F contradicts the ALJ's findings. Specifically, Dr. Rattray-Hahn checked that plaintiff would stand and/or walk "at least 2 hours in an 8 hour workday," which would indicate a sedentary RFC (AR 170), and the ALJ found that plaintiff had a light RFC (AR 21). Therefore, plaintiff asserts that the ALJ's decision contradicts with an opinion to which he gave substantial weight (#12, p. 12). However, this contention is not entirely accurate. It is true that the ALJ's decision contradicts with this one detail of Dr. Rattray-Hahn's opinion. However, in this same exhibit, the doctor noted that plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently, and could sit six hours or more in an eight hour work day, indicative of a greater RFC (AR 170). Moreover, Dr. Rattray-Hahn stated that plaintiff was "certainly capable of light to medium duty and that certainly would be authorized without difficulty. The patient is capable of gainful employment and I would refer you to the associated MSS 12/99 form for review" (AR 169).

Additionally, the physicians who authored the other assessments to which the ALJ gave substantial weight found that plaintiff was capable of performing light or even medium work (AR 175, 295). The ALJ also cited other evidence in plaintiff's record to support his opinion that plaintiff had a light RFC (AR 23), and properly discredited plaintiff's credibility, as previously discussed. Therefore, even if the ALJ erred in giving substantial weight to Dr. Rattray-Hahn's notation that plaintiff was capable of only sedentary work, such error was harmless as the ALJ's light RFC finding is supported by substantial evidence. Moreover, even assuming that plaintiff was only capable of performing sedentary work, the vocational expert testified that plaintiff could perform jobs as a semiskilled, sedentary medical office clerk (AR 74). Therefore, again, any error by the ALJ was harmless. *See Stout v. Comm'r, Social Security Admin.*, 454 F.3d 1050, 1054-55 (9th Cir. 2005) (holding that an ALJ's error is harmless if it was inconsequential to the ultimate nondisability determination).

### F. Plaintiff's Anemia

Plaintiff claims that the ALJ failed to consider plaintiff's diagnosis of pernicious anemia (#12, p. 13). This diagnosis is documented in plaintiff's medical records, and the anemia causes plaintiff to suffer from low energy levels and fatigue. *Id*. Defendant's position is that plaintiff fails to cite to any relevant evidence to demonstrate that his anemia affected his ability to work (#16, p. 10). Although plaintiff received treatment for pernicious anemia, there is no indications that such condition caused any functional limitations. *Id*. p. 11.

Although plaintiff was diagnosed with and continually treated for pernicious anemia, there is no indication that this disorder impaired plaintiff's ability to work. Plaintiff received an injection of vitamin B12 monthly to treat his anemia. Plaintiff also took a folic acid tablet daily. Further, on at least one occasion, plaintiff skipped his appointment to receive his vitamin B12 injection because he was "too lazy to come in" (AR 323). This behavior is not consistent with

plaintiff's claim that his anemia is so severe that it causes him to be disabled. Therefore, the ALJ did not err in not considering plaintiff's pernicious anemia in making his finding of non-disability.

## V. CONCLUSION

Based on the foregoing, the court recommends that the plaintiff's motion for reversal and /or remand (#12) be **DENIED** and defendant's cross motion for summary judgment (#16) be **GRANTED**.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VI. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for reversal and /or remand (#12) be **DENIED** and defendant's cross motion for summary judgment (#16) be **GRANTED**.

**DATED:** September 15, 2009

_Valerie P. Cooke_
**UNITED STATES MAGISTRATE JUDGE**